FILED - KZ

October 20. 2023 1:34 PM

U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

__ems_ Scanned by $ES$ $10|20$

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RITA WILLIAMS                                   )
                                                )
              Plaintiff                         )
                  v.                            )
                                                )
GRETCHEN WHITMER in her official capacity       )
as Governor of Michigan; DANA NESSEL in her     )
official capacity as Attorney General of Michigan;  )
HONORABLE FRANK G. HILLARY in his               )
official capacity as Magistrate Judge; CHRIS    )
ELSWORTH in his official capacity as assistant  )
prosecutor; JULIE NAFKOOR PRATT in her          )
official capacity as assistant prosecutor;      )
                                                )
              Defendants.                       )

**1:23-cv-1115**

**Robert J. Jonker
U.S. District Judge**

**COMPLAINT AND CLAIM FOR DECLARATORY AND FOR INJUNCTIVE RELIEF**

Plaintiff Rita Williams hereby brings this claim for a constitutional challenge to

Michigan's Statute's MC750.411h and for infringing of her constitutional protected rights of

freedom of speech, right to due process, and to be free from excessive bail conditions.

**Introduction**

1.      On July 29, 2023, Rita Williams (Plaintiff) husband was arrested for an alleged

financial crime that took place at Flex Fab LLC.

2.      In August of 2022, Plaintiff started a blog about the unlawful arrest of her

husband.

3.      On January 20, 2023, Plaintiff starts a petition on Change.org to inform people of

what was happening in the courtroom regarding her husband's case which prompted other to

reach out to Plaintiff and share their stories of similar situations that Plaintiff had described in the

petition had happened to them.

4.      On February 6, 2023, Plaintiff contacted Attorney General Dana Nessel's office

1

asking for intervention and investigation into the misconduct alleged in her petition.

5.      On or about June 5, 2023 Plaintiff filed a complaint regarding the judicial and prosecutorial misconduct that was taking place in the Barry County Courthouse with the Michigan Department of Civil Rights.

6.      On or about September 8, 2023, Plaintiff exercised her 1st Amendment rights and posted on social media about the prosecutorial and judicial misconduct that she believed to be happening regarding her husband's case that had a direct impact on her mental health.

7.      As a result of the post, Barry County Prosecutor's Office called the Michigan State Police to Plaintiff's home stating she was a danger to herself and children who came to her home and did a wellness check.

8.      Between September and October, Plaintiff sent emails to the prosecutors public email addresses questioning them about their misconduct which Plaintiff also posted on her social media accounts to inform the public about the prosecutors and judicial misconduct.

9.      On September 23, 2023, Chris Elsworth sends a friend request to Plaintiff's Facebook account and threatens Plaintiff.

10.     On October 2, 2023, Julie Nakfoor Pratt sends a friend request to Plaintiff's Facebook account.

11.     As a result of Plaintiff's efforts, Defendants Chris Elsworth and Julie Nakfoor Pratt adopted a plan to retaliate against Plaintiff for her protected speech, resulting in Plaintiff's arrest on manufactured misdemeanor charges of stalking and using a computer to commit a crime.

12.     This lawsuit seeks redress for that unconstitutional arrest.

13.     Defendants Chris Elsworth and Julie Nakfoor Pratt with the assistance of Dana

2

Nessel brought charges against Plaintiff under an unconstitutional statute that is rarely used to arrest people.

14.     Plaintiff's arrest was unlawful because it was engineered and executed as part of a high-level policy to retaliate against Plaintiff's exercise of her constitutionally protected political speech.

15.     This was a long-term and pervasive policy and involved significant deliberations—outside of split-second decision making by high-level officials.

16.     Defendants succeeded in their attempts to punish Plaintiff, who, previously suffered from PTSD and this ordeal has triggered that past trauma which contributed to her heart rate being 119 beats per minute which the average heart rate for women her age is 78-82 beats per minute.

17.     Plaintiff, whose financial resources are limited due to her husband being incarcerated, has been so traumatized by the experience that she is uncomfortable with even filing this claim for fear of retaliation against herself and/or her husband.

18.     There is nothing more fundamental to our system of government than its founding principle that the First Amendment protects political speech. This principle means little if local governments and their officials can without consequence punish and intimidate those who engage in political speech.

19.     This suit is filed in defense of this principle and to ensure the constitutional accountability of all government officials.

**PARTIES**

20.     Plaintiff Rita Williams ("Plaintiff") is a woman, one of the people who is an inhabitant of Michigan and lives in this district.

3

21.     Defendant Gretchen E. Whitmer is the Governor of the State of Michigan. Whitmer is sued in her in her official capacity only.

22.     Defendant Dana Nessel is the Attorney General of the State of Michigan. Nessel is sued in her official capacity only.

23.     Defendant Judge Frank G. Hillary is the Magistrate Judge of the State of Michigan, Barry County 56 B Judicial Court. Judge Hillary is sued in his official capacity only.

24.     Defendant Chris Elsworth is a prosecutor for Barry County. He is sued in his individual and official capacity.

25.     Defendant Julie Nakfoor Pratt is a prosecutor for Barry County. She is sued in his individual and official capacity.

## JURISDICTION

26.     Article III of the Constitution establishes the federal judiciary. Article III, Section II provides the jurisdiction. Plaintiff brings this claim seeking redress for a deprivation of rights under a color for violating the 1st, 4th, and 8th Amendment and the Due Process Clause of the Fourteenth Amendment. The Court therefore has federal-question jurisdiction under Article III of the U.S. Constitution and 28 U.S.C. § 1331. 11.

27.     Plaintiff seeks declaratory relief and a preliminary and permanent injunction against MCL 750.411(h) and 752.7973. Accordingly, she also brings this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

28.     Governor Whitmer is a resident of, and the principal office of the Governor is located in, Lansing, Michigan.

29.     The defendant's principal business is located in Michigan.

4

30.    A substantial part of the events giving rise to the claims in this claim occurred in this district in Michigan.

31.    The city of Lansing is the seat of government for the State of Michigan. Michigan Const. art. III, § 1 (1963). It is located within Barry County, which is within the territorial jurisdiction of the Western District of Michigan. 28 U.S.C. § 102(b)(1). This Court is therefore a proper venue for this action under 28 U.S.C. § 1391(b)(1)–(2).

## THE DUTIES OF THE GOVERNMENT

32.    The Declaration of Independence states the principles on which our government and our identity as Americans are based. A national government of limited, divided, and overlapping powers, with the majority of power reserved to the states and to the people.

33.    Written in 1787, ratified in 1788, and in operation since 1789, the United States Constitution is the world's longest surviving written charter of government. Its first three words – "We The People" – affirm that the government of the United States exists to serve the people. It was from this simple document, enacted in the name of "We the People of the United States," and barely more than 4500 words in length, that the American republic was born.

34.    And for over two hundred years, despite wars, a Great Depression, Supreme Court justices all too willing to substitute their own political preferences for what the Constitution and other laws require, and the consistent threat posed by the modern administrative state, and over a dozen new amendments, the Constitution and American republic have survived intact.

35.    The fight to restore and protect the Constitution by bringing about the principles of the Declaration of Independence is the story of America. It is a story that will never be over so long as tyranny and oppression exist in the form of Government.

36. The U.S. Constitution mandates that all States uphold a "republican form" of government. All State governments are modeled after the Federal Government and consist of three branches: executive, legislative, and judicial. Therefore, in basic structure state constitutions much resemble the U.S. Constitution.

37. They contain a preamble, a bill of rights, articles that describe separation of powers between the executive, legislative and judicial branches, and a framework for setting up local governments. Article I, Section 10 of the Constitution of the United States puts limits on the powers of the states. The Defendants in this claim have exceeded the limit placed on them which is the reason for this claim.

## RELEVANT FACTS

38. Plaintiff is a wife, mother, and woman of strong faith who believes in morals, values, honesty, and integrity.

39. Other than the charge at issue in this case, Plaintiff has no criminal record and has never been arrested.

40. Plaintiff incorporates the allegations in the foregoing paragraphs 1-19 as if set forth fully herein.

41. Plaintiff put the Barry County Courthouse, Judicial Officers, Prosecutors Office, prosecutors and clerks via writing that Plaintiff suffers from Complex Post Traumatic Stress Disorder.

42. In July of 2022, Plaintiff's husband and the prosecutor's office had agreed to him turning himself in, but instead used the Michigan State Police to come and arrest him at home in front of his children, neighbors and Plaintiff

43. On July 29, 2022 Plaintiff notified Julie Nakfoor Pratt of the traumatizing effect

6

the arrest that happened on July 29ᵗʰ, 2023 had on Plaintiff.

44.    Plaintiff's husband's probation officer Doug Jerzyk calls Plaintiff for an interview regarding Ryan's pre-sentencing report. He informs Plaintiff that FlexFab LLC inflated their alleged financial claim to over half a million dollars.

45.    In December 2022, Christopher Elsworth was aware of this information, but does not hand it over until two days before Plaintiff's husband's sentencing.

46.    On January 12, 2023, Plaintiff and her husband appeared in court believing there was a plea deal for probation, instead sentenced him to ten to 20 years inflating the Plaintiff's PTSD.

47.    On June 5, 2023, Plaintiff requested the video from her husband's sentencing hearing to show the misconduct directed towards Plaintiff, but was denied.

48.    As a result of the constant Legal Abuse, Plaintiff's physician had her take a month leave from work to debrief from the PTSD as a result of all the legal abuse.

49.    Plaintiff files a formal complaint against Barry County Courthouse to the Michigan Department of Civil Rights.

50.    On August 24, 2023, Michigan Department of Civil Rights opens up a discrimination case regarding the judges and prosecutors in Barry County.

51.    On or around September 6, 2023, Plaintiff starts investigating Campaign Finance concerns in regards Julie Nakfoor Pratt.

52.    On September 9, 2023, after the Police come to Plaintiff's house to do a wellness check, Plaintiff submits another ADA and MDCR complaint and publishes her findings regarding Julie Nakfoor Pratt's campaign finance disclosures.

53.    On October 5, 2023, the Michigan Attorney General issues an arrest warrant for

Plaintiff and had Battle Creek Police Department execute it instead of Kalamazoo Public Safety which has jurisdiction over Plaintiff's city.

53.     Julie Nakfoor Pratt and Dana Nessel both sit on a child abuse task force.

54.     As a condition of Plaintiff's bail, she is restricted from using the internet.

**COUNT I**
**(First Amendment- 42 U.S.C. § 1983—First and Fourteenth Amendments**
**Retaliatory Arrest Claim Against Individual Defendants Elsworth, Pratt, and Nessel**

55.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

56.     Plaintiff's actions in championing the creation of a nonbinding petition and informing the public of the judicial and prosecutorial misconduct as well as sending emails and posting on social media are safeguarded by the First Amendment to the United States Constitution.

57.     Using their respective authorities under color of state law, the Individual Defendants subjected Plaintiff to the deprivation of her rights under the First Amendment by retaliating against her for exercising those rights.

58.     Motivated to punish and intimidate Plaintiff for her exercise of free speech, the Individual Defendants engaged in various harmful acts against Plaintiff in violation of clearly established First Amendment law, resulting in her arrest. These acts include:

        a.      Defendants Pratt and Elsworth lodging a baseless claim alleging Plaintiff was a harm to herself and children thus prompting a wellness check by the police;

        b.      Participating in and encouraging a criminal investigation and the institution of criminal charges against Plaintiff for her involvement in posting on social media and sending emails regarding the judicial and prosecutorial misconduct;

8

c.     Defendant Nesel's authorizing a complaint and institution of criminal charges against Plaintiff for exercising her constitutionally protected First Amendment rights;

d.     Defendants Pratt and Elsworth manufacturing criminal charges against Plaintiff.

e.     Defendants Pratt and Elsworth conducting a full criminal investigation of Plaintiff under a "Stalking" statute that is never used against individuals similarly situated to Plaintiff; swearing out a misleading criminal complaint against Plaintiff; and proceeding with a criminal arrest process meant to intentionally exclude the district attorney's involvement and foreclose any avenue for Plaintiff to appear before a court either by way of a summons rather than be jailed.

59.     The foregoing are actions independently unconstitutional but also were intended to send a warning to anyone else in Barry County bold enough to challenge the Individual Defendants' grip on power by exercising their First Amendment rights.

60.     It is clearly established that retaliating against individuals by arresting them under a law that is generally not used to arrest similarly-situated individuals is a violation of the First Amendment. Every reasonable government official would have had a fair warning that doing so and participating in a scheme to do so is unconstitutional.

61.     It is furthermore clearly established that retaliating against Plaintiff by arresting her for the Defendants engaging in the various harmful acts described in Paragraph 58 is a violation of the First Amendment. Every reasonable government official would have had a fair warning that doing so and participating in a scheme to do so is unconstitutional.

62.     The facts also demonstrate that the criminal charge the Individual Defendants

9

assigned to Plaintiff was a sham charge, regardless of attempts to fabricate probable cause or

convince a judge to sign an arrest warrant. Thus, even if probable cause existed, the application

of an unconstitutional and rarely enforced statute to Plaintiff is insufficient to outweigh the

retaliatory animus illustrated by the surrounding circumstances.

63.    No other similarly situated individuals have ever been charged or arrested

as Plaintiff was.

64.    Moreover, the Individual Defendants were not acting under time constraint and

made no split-second decisions regarding Plaintiff's arrest.

65.    The Individual Defendants' unconstitutional acts, motivated by retaliatory

animus, directly harmed Plaintiff by chilling her ability to exercise her First Amendment rights

and by causing her pecuniary loss, financial loss in the form of her job, and the deterioration of

her health.

66.    Had it not been for the retaliatory animus, the Individual Defendants would have

never arrested Plaintiff for her actions expressing public discontent with the city government.

## COUNT II
### (First Amendment- 42 U.S.C. § 1983—First Amendment
### Unconstitutional Burden on the Fundamental Right to Freedom of Speech
### Defendants Judge Frank G. Hillary, Elsworth and Pratt

67.    Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth

fully herein.

68.    As a condition of Plaintiff's bail, she was ordered to not use a computer or other

device including a phone to gain access to the internet or social media during the pendency of

her pending court matter unless it was with her attorney or immediate family, but not friends, her

job or extended family until November 7, 2024.

10

69.    As a result of this order, Plaintiff lost her job as she worked from home and uses the internet.

70.    Plaintiff has also been unable to do her advocacy work as a podcast producer and her trial and mitigation consulting work.

71.     This condition of bail is not narrowly tailored to serve the State's legitimate interest in ensuring the Plaintiff appears in court, it is another restriction on Plaintiff's constitutionally protected First Amendment protection of speech rights.

72.    It "arbitrarily burdens Plaintiff by preventing a wide range of communication and expressive activity unrelated to achieving its purported goal of ensuring Plaintiff appears in court.

73.    A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more.

74.    Social media offers "relatively unlimited, low-cost capacity for communication of all kinds." On Facebook, for example, users can debate religion and politics with their friends and neighbors or share vacation photos. On LinkedIn, users can look for work, advertise for employees, or review tips on entrepreneurship. And on Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner. Indeed, Governors in all 50 States and almost every Member of Congress have set up accounts for this purpose.

75.    In short, social media users employ these websites to engage in a wide array of protected First Amendment activity on topics as diverse as human thought.

76.    By prohibiting Plaintiff from using the internet and having access to her social media websites, Defendants with one broad stroke barred access to what for many are the principal sources for knowing current events, checking ads for employment, speaking and

listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge. These internet and social media sites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an Internet connection to "become a town crier with a voice that resonates farther than it could from any soapbox."

77.     In sum, to foreclose access to social media altogether is to prevent the Plaintiff from engaging in the legitimate exercise of her First Amendment rights and it is unconstitutional.

78.     It is well established that, as a general rule, the Government "may not suppress lawful speech as the means to suppress unlawful speech." *Ashcroft v. Free Speech Coalition*, 535 U. S. 234, 255 (2002) That is what the Defendants have done here and it is unconstitutional.

**COUNT III**
**(First Amendment- 42 U.S.C. § 1983—Eight Amendment**
**Excessive, Cruel, and Unusual Condition of Bail**
**Defendants Judge Frank G. Hillary, Elsworth and Pratt**

79.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

80.     The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and nor cruel and unusual punishments inflicted". *Stack v. Boyle*, 342 U.S. 1 (1951)

81.     As a condition of the Plaintiff's release, the Individual Defendants conspired to prevent Plaintiff from having access to the internet as a condition of her bail.

82.     As stated in ¶¶ 68-78, this requirement is unconstitutional. As applied through the eight amendment, it is excessive, cruel, and unusual punishment.

83.     If the Defendants who actually are acting in their individual capacity wanted to

12

attempt to restrict the Plaintiff from exercising her constitutionally protected First Amendment rights; they could have sought a personal protection order (PPO).

84.     It is cruel, unusual, and excessive because Plaintiff has essentially been sentenced[1] for an allegation that she has only been accused of and at this point has not been afforded a trial by jury which is a right guaranteed by the sixth amendment.

### COUNT IV
### (First Amendment- 42 U.S.C. § 1983—Fourteenth Amendment
### Unconstitutional
### Defendants Whitmer and Nessel

85.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

86.     A statute is unconstitutionally vague in violation of the Due Process Clause if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," *Hill v. Colorado*, 530 U.S. 703, 732 (2000), or (2) fails to "provide explicit standards for those who apply" the law such that "arbitrary and discriminatory enforcement" is authorized or even encouraged, *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)

87.     MC750.411h violates the Equal Protection and Due Process Clause of the Fourteenth Amendment, both on its face and as applied, because it engages in speaker-based discrimination and allows for some people to be charged criminally and others civilly.

88.     Most complaints involving stalking charges, the Petitioner gets a personal protection order (PPO) which is valid for a certain amount of time.

89.     However, in the situation here, MC750.411h was used as retaliation whereby

---

[1] 750.411h (3)(a) The court may place an individual convicted of violating this section on probation for a term of not more than 5 years. If a term of probation is ordered, the court may, in addition to any other lawful condition of probation, order the defendant to do any of the following: (a) Refrain from stalking any individual during the term of probation.

Plaintiff was charged criminally. MC750.411h not only violates the Fourteenth Amendment, but it also violates Michigan's Constitution:

### § 5 Freedom of speech and of press. Sec. 5.

> Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press.

90.     Plaintiff was arrested and charged for exercising her Freedom of Speech which is constitutionally protected by Section 5 of the Michigan Constitution. Therefore MC750.411h is unconstitutional on its face applied and as well to the charges that were brought against Plaintiff.

91.     Section 17 of the Michigan Constitution guarantees under section 17:

### § 17 Due process of law; fair treatment at investigations. Sec. 17.

> No person shall be compelled in any criminal case to be a witness against himself, nor be  deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

92.     Plaintiff was deprived of her liberty by being arrested for political speech, treated unfairly because Barry County prosecutors arrested her under MC750.411h which is unconstitutional, and the investigation was unfair because the Barry County Prosecutors and Judges abused their position by having Plaintiff arrested.

93.     MC750.411h is unconstitutional as applied to Plaintiff and on its face when it is used to take a civil matter that is usually handled through a PPO and turns it into a criminal charge. It infringes upon an individual's freedom of speech to criticize the government when it is not doing its job in violation of the 1st and 14th of the United States Constitution and Section 5 and 17 of the Michigan Constitution.

**COUNT V**
**(Americans with Disabilities Act (ADA), 42 U.S.C. § 12132**
**Defendants BARRY COUNTY Judge Frank G. Hillary, Elsworth and Pratt**

94.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth

fully herein.

95.     Plaintiff is an individual with disabilities as defined by the ADA, as set forth in

more detail above. Plaintiff is a qualified individual because she resides in the county of Barry

County and relies on Barry County for judicial and executive services.

96.     Barry County is a public entity within the meaning of the ADA, 42 U.S.C. §

12131(1)(a), (b).

97.     Title II of the ADA provides that "no qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity." 42 U.S.C. § 12132.

98.     The regulations implementing Title II of the ADA provide that:

> A public entity may not, directly or through contractual or
> other arrangements, utilize criteria or methods of
> administration – (i) That have the effect of subjecting
> qualified individuals with disabilities to discrimination on
> the basis of disability; [or] (ii) That have the purpose or
> effect of defeating or substantially impairing
> accomplishment of the objectives of the public entity's
> program with respect to individuals with disabilities.

28 C.F.R. § 35.130(b)(3).

> A public entity shall make reasonable modifications in
> policies, practices, or procedures when the modifications
> are necessary to avoid discrimination on the basis of
> disability, unless the public entity can demonstrate that
> making the modifications would fundamentally alter the
> nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).

15

99.     Defendants have violated, and will continue to violate, the rights of Plaintiff under Title II of the ADA in the following ways: discrimination on the basis of disability; denying reasonable accommodations during court encounters; and maintaining practices that disparately impact people with disabilities like Plaintiff. See, e.g., 28 C.F.R. 35.130(a), 28 C.F.R. 35.130(b)(1), 28 C.F.R. 35.160.

100.    As a result of the violations of Title II, Plaintiff has been denied the services and benefits of the courts, including fair and just treatment in judicial proceedings and arrests.

101.    As a direct and proximate result, Plaintiff has suffered injuries and is at continuous risk of being subjected to additional injuries and harm such as severe emotional distress, heart rate increasing and at risk of a heart attack just to name a few.

PRAYER FOR RELIEF WHEREFORE, the Plaintiff respectfully requests the following relief:

A.     Enter a declaratory judgment that MC750.411h violates the federal and state constitutions;

B.     Enter a permanent injunction on behalf of Plaintiff enjoining the Defendants from continuing their criminal charges against Plaintiff for exercising her constitutionally protected rights;

C.     Award Plaintiff her attorneys' fees, costs, actual, compensatory and punitive damages;

D.     Award Plaintiff other relief that this Court may deem just and proper.

Dated: October 20, 2023

**Plaintiff Demands a Trial By Jury**

16

Respectfully submitted,

By: /s/ Rita Williams

Rita Williams
8560 Macywood Lane
Richland, MI 49083
269-274-9808
ritawilliamsmscj@proton.me